## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEVE SURBAUGH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No.: `CIV-14-1252-L` |
| Plaintiff, | CLASS ACTION COMPLAINT |
| vs. | **<u>JURY TRIAL DEMANDED</u>** |
| SANDRIDGE ENERGY, INC; TOM L. WARD, JAMES D. BENNETT; EDDIE M. LEBLANC; AND RANDALL D. COOLEY, | |
| Defendants. | |

Plaintiff, Steve Surbaugh,  individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding SandRidge Energy, Inc. ("SandRidge" or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet.

Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the securities of SandRidge between March 1, 2013 through November 4, 2014 (the "Class Period"), seeking to recover damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      SandRidge is engaged in the exploration and production of oil and natural gas. SandRidge divides its operations in three reportable business segments:  (a) exploration and production; (b) drilling and oil field services; and (c) midstream services.

3.      SandRidge entered into a 30-year treating agreement with Occidental Petroleum Corporation ("Occidental") to build and operate a carbon dioxide extraction plant called Century Plant in Pecos County, Texas. Under this agreement, Occidental will cover the expected costs of building the project and operate Century Plant. SandRidge is to drill, produce and deliver carbon dioxide gas to Century Plant. SandRidge will retain all of the methane gas produced and Occidental will retain all of the carbon dioxide gas. During the term of the agreement, SandRidge is required to deliver 3,2000 Bcf  (billion cubic feet of gas at standard conditions) of Carbon Dioxide. If SandRidge does not meet the annual delivery requirement of carbon dioxide, the Company must pay Occidental $0.25 per Mcf (1000 cubic

feet of gas) for the amount under the requirement. If the shortage of production is not made up by over deliveries in the future, SandRidge must pay Occidental an additional penalty of $0.70 per Mcf of the aggregate undelivered volumes in 2041.

4.     On November 4, 2014 the SEC notified SandRidge that its calculation of the under-delivery penalties for the Occidental agreement should be accounted for quarterly rather than annually as SandRidge had been doing since the entering of the agreement. This change in accounting for the under-delivery penalties caused SandRidge to announce that investors could no longer rely on its financial statements for the years ending 2012 and 2013, each quarter of 2013 and the first two quarters of 2014.

## JURISDICTION AND VENUE

5.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

6.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

7.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b), as a substantial part of the conduct complained of herein occurred in this District.

8.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of

interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9.    Plaintiff Steve Surbaugh, as set forth in the accompanying certification, incorporated by reference herein, purchased SandRidge securities at artificially inflated prices during the Class Period and has been damaged thereby.

10.    Defendant SandRidge is a Delaware corporation with its principal executive offices located in Oklahoma City, Oklahoma. SandRidge's common stock is listed on the NYSE exchange under ticker "SD."

11.    Defendant Tom L. Ward ("Ward") served as the Company's Chief Executive Officer and Chairman of the Board from the beginning of the Class Period until June 2013.

12.    Defendant James D. Bennett ("Bennett") served as the Company's Chief Financial Officer until June 2013 when he became the Company's Chief Executive Officer. He currently is the CEO of the Company.

13.    Defendant Eddie M. LeBlanc ("LeBlanc") served as the Company's Chief Financial Officer beginning in June 2013 and throughout the rest of the Class Period.

14.    Defendant Randall D. Cooley ("Cooley") at all relevant times herein served as the Company's Principal Accounting Officer.

15.    Ward, Bennett, LeBlanc, and Cooley are collectively referred to hereinafter as the "Individual Defendants."

16.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

(f)     approved or ratified these statements in violation of the federal securities laws.

17.     As officers, directors and controlling persons of a publicly-held company whose common stock is and was registered with the SEC pursuant to the Exchange Act, and was traded on the NYSE and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

18.     SandRidge is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

19.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to SandRidge under *respondeat superior* and agency principles.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons who purchased the common stock of SandRidge during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

21.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, SandRidge's securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class.  Members of the Class may be identified from records maintained by SandRidge or its transfer agent and may be notified of the

pendency of this action by mail, using a form of notice customarily used in securities class actions.

22.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

23.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

24.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)  whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of SandRidge; and

(c)  to what extent the members of the Class have sustained damages and the proper measure of damages.

25.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small,

the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

26.     On March 1, 2013 SandRidge filed its annual report for the fiscal year ended December 31, 2012 on Form 10-K with the SEC.  The 10-K was signed by Defendants Ward, Bennett, and Cooley. The 10-K was separately certified by Defendants Ward and Bennett pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") attesting to the completeness and accuracy of the Company's annual report. The financial statements contained in the 10-K were materially false and misleading because they failed properly to account for the penalties SandRidge accrued under the agreement with Occidental.

27.     On May 8, 2013 SandRidge filed with the SEC its quarterly report for the first quarter of 2013 ended March 31, 2013 on Form 10-Q.  The 10-Q was signed by Defendant Bennett; and separately certified by Ward and Bennett pursuant to SOX attesting to the completeness and accuracy of the Company's quarterly report. The financial statements contained in the 10-Q were materially false and misleading because they failed properly to account for the penalties SandRidge accrued under the agreement with Occidental.

28.     On August 8, 2013 SandRidge filed with the SEC its quarterly report for the second quarter of 2013 ended June 30, 2013 on Form 10-Q.  The 10-Q was signed by Defendant LeBlanc; and separately certified by Bennett and LeBlanc pursuant to SOX

attesting to the completeness and accuracy of the Company's quarterly report. The financial statements contained in the 10-Q were materially false and misleading because they failed properly to account for the penalties SandRidge accrued under the agreement with Occidental.

29.     On November 6, 2013 SandRidge filed with the SEC its quarterly report for the third quarter of 2013 ended September 30, 2013 on Form 10-Q.  The 10-Q was signed by Defendant LeBlanc; and separately certified by Bennett and LeBlanc pursuant to SOX attesting to the completeness and accuracy of the Company's quarterly report. The financial statements contained in the 10-Q were materially false and misleading because they failed to properly account for the penalties SandRidge accrued under the agreement with Occidental.

30.     On February 28, 2014 SandRidge filed with the SEC its annual report for the fiscal year ended December 31, 2013 on Form 10-K.  The 10-K was signed by Defendants Bennett, LeBlanc, and Cooley; and separately certified by Bennett and LeBlanc pursuant to SOX attesting to the completeness and accuracy of the Company's annual report. The financial statements contained in the 10-K were materially false and misleading because they failed properly to account for the penalties SandRidge accrued under the agreement with Occidental.

31.     On May 8, 2014 SandRidge filed with the SEC its quarterly report for the first quarter of 2014 ended March 31, 2014 on Form 10-Q.  The 10-Q was signed by Defendant LeBlanc; and separately certified by Bennett and LeBlanc pursuant to SOX attesting to the

completeness and accuracy of the Company's quarterly report. The financial statements contained in the 10-Q were materially false and misleading because they failed properly to account for the penalties SandRidge accrued under the agreement with Occidental.

32.    On August 7, 2014 SandRidge filed with the SEC its quarterly report for the second quarter of 2014 ended June 30, 2013 on Form 10-Q.  The 10-Q was signed by Defendant LeBlanc; and separately certified by Bennett and LeBlanc pursuant to SOX attesting to the completeness and accuracy of the Company's quarterly report. The financial statements contained in the 10-Q were materially false and misleading because they failed to properly account for the penalties SandRidge accrued under the agreement with Occidental.

## TRUTH BEGINS TO EMERGE

33.    On November 4, 2014 the Company filed with the SEC a press release on Form 8-K. The press release states in relevant part:

**Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

As SandRidge Energy, Inc. (the "Company") has disclosed in prior filings, it is party to a 30-year treating agreement (the "Agreement") with Occidental Petroleum Corporation ("Occidental") for the removal of $CO_2$ from the Company's delivered natural gas production. Under the Agreement, the Company is required to deliver to Occidental's Century Plant a total of approximately 3,200 Bcf of $CO_2$ during the term of the Agreement. Through September 30, 2014, the Company had delivered to Occidental 117 Bcf of $CO_2$. After each calendar year, the Company is obligated to pay Occidental $0.25 per Mcf (the "$0.25 Fee") to the extent minimum annual $CO_2$ volume requirements are not met. If such underdelivered volumes are not made up with commensurate overdeliveries in the future, the Company will be obligated to pay Occidental an additional $0.70 per Mcf (the "$0.70 Fee") of the aggregate underdelivered volumes in 2041.

10

Because the minimum $CO_2$ delivery requirements associated with the $0.25 Fee are based on annual volumes, and not quarterly volumes, the Company has historically accrued and recorded a liability for the annual $0.25 Fee in the fourth quarter of each year. Likewise, because the Company has until 2041 to make up underdelivered volumes with commensurate overdeliveries, no amount has been accrued by the Company as a liability in respect of the $0.70 Fee.

Based on this accounting treatment, the Company accrued liabilities for the $0.25 Fee of $8.5 million in 2012 and $32.7 million in 2013, which are reflected in the consolidated financial statements included in the Annual Reports on Form 10-K for such years. In addition, the Company disclosed in its Annual Report on Form 10-K for the year ended December 31, 2013 that it expected to accrue between approximately $30.0 million and $37.0 million for the $0.25 Fee during the year ending December 31, 2014 for amounts related to the Company's anticipated shortfall in meeting its annual $CO_2$ delivery obligations for 2014 under the Agreement.

**The Company has recently engaged in discussions with the staff of the Division of Corporation Finance (the "Staff") of the Securities and Exchange Commission regarding the appropriate accounting treatment with respect to the timing of accrual of liabilities for the $0.25 Fee. As a result of such discussions, the Company is reconsidering its historical accounting treatment with respect to such accruals, and, in that regard, some or all of the liabilities associated with the Agreement previously recorded annually by the Company may be required to be re-recorded in one or more prior quarterly periods, which, in turn, could materially affect the net income previously reported for prior periods.** The Company plans to continue to discuss with the Staff the appropriate accounting treatment with respect to the underdelivery penalties under the Agreement, and any revised accounting treatment adopted by the Company could materially affect the amount and timing of accruals with respect to such penalties. **Upon resolution of the matter with the Staff, the Company will restate, to the extent necessary, the financial statements for prior periods to make any necessary changes. In addition, the Company is reassessing its previous conclusions regarding the effectiveness of internal control over financial reporting and disclosure controls and procedures as they relate to the accounting under the Agreement.**

**As a result of the circumstances described above, on November 2, 2014, the Audit Committee of the Board of Directors of the Company concluded that (i) the consolidated financial statements of the Company for the periods ended December 31, 2012 and 2013 included in the Company's Annual Reports on Form 10-K for the periods then ended, with respect to which the Company**

**received an unqualified opinion from its independent registered public accounting firm, PricewaterhouseCoopers LLP ("PwC"), and (ii) the unaudited consolidated financial statements of the Company for the periods ended March 31, 2013, June 30, 2013, September 30, 2013, March 31, 2014, and June 30, 2014 included in the Company's Quarterly Reports on Form 10-Q for the periods then ended should no longer be relied upon due to potential changes related to the accrual of a liability associated with underdelivery by the Company of $CO_2$ to the Century Plant.**

In connection with any restatement of the financial statements for prior periods as described above, and as a result of the resolution of other comments made by the Staff, the Company may make other changes to such financial statements; however, the Company does not anticipate that any of these other corrections would be material to the respective prior periods.

The Company is working to complete and file its Quarterly Report for the period ended September 30, 2014 as soon as possible following resolution of this matter. However, it is currently anticipated that such filing will not be timely.

SandRidge's Audit Committee has discussed the foregoing matters with PwC.

(emphasis added)

34.     On November 4, 2014, the Company filed a press release stating that the third

quarter financials for 2014 would be delayed pending the investigation of the SEC's

concerns. The press release states in relevant part:

SandRidge Energy, Inc. Files Form 8-K Noting Delay in Third Quarter Financial Reporting

OKLAHOMA CITY, Nov. 4, 2014 /PRNewswire/ -- **SandRidge Energy, Inc. (the "Company") (SD) today announced that as a result of a routine review by the Securities and Exchange Commission (the "SEC") of its Annual Report on Form 10-K, the Company currently anticipates that its Quarterly Report on Form 10-Q for the third quarter of 2014 will not be filed timely, but, rather, will be completed and filed as soon as possible following the resolution of the SEC's review.**

As the Company has disclosed in prior filings, it is party to a 30-year agreement with Occidental Petroleum Corporation ("Occidental") for the delivery by the Company to Occidental of $CO_2$ and the removal of $CO_2$ from the Company's delivered natural gas production. After each calendar year, the Company is obligated to pay a penalty fee to the extent minimum required $CO_2$ delivery volumes are not met.

**While the Company historically has accrued a liability for such annual penalty on an annual basis, the Staff (the "Staff") of the Division of Corporation Finance of the SEC recently has requested that the Company reassess that practice and consider whether the liability should be accrued quarterly**. As a result of its ongoing dialogue with the Staff some or all of the liabilities associated with the agreement may be required to be shifted to one or more prior periods, which could materially affect the net income of such prior periods. **Upon resolution of the matter with the Staff, the Company will restate, to the extent necessary, these financial statements to reflect such shifts. In addition, the Company is reassessing its previous conclusions regarding the effectiveness of internal control over financial reporting and disclosure controls and procedures as they relate to the accounting under the Agreement.**

**Accordingly, the Audit Committee of the Board of Directors of the Company has concluded that the consolidated financial statements included in the Annual Reports on Form 10-K and Quarterly Reports on Form 10-Q, as applicable, filed for periods ended December 31, 2012, March 31, 2013, June 30, 2013, September 30, 2013, December 31, 2013, March 31, 2014, and June 30, 2014 cannot be relied upon until resolution of this matter.**

It is important to note, there is no impact on the Company's cash and cash equivalent balances reported in any of these periods.

SandRidge President and CEO, James Bennett, commented, "We are obviously disappointed in the distraction this news may bring at such an otherwise exciting time for SandRidge. We want to be clear that, while certainly unfortunate, at this time we believe the resolution of this matter will only affect the timing of accruals of our CO2 underdelivery penalty and does not have any material impact on the core sectors of our business. Our team is working diligently to resolve this matter with the SEC as quickly as possible,

and we will still host our regularly scheduled conference call to update our investors on operating progress."

(emphasis added)

35.    This announcement surprised the market and caused the Company's stock to fall $0.25 per share or about 6.5% to $3.56 per share on November 4, 2014.

36.    Had the Plaintiff and the Class been aware of this adverse information they would not have purchased the Company's securities at all or would not have purchased such securities at the artificially inflated prices at which they did.

## The Affiliated Ute Presumption Of Reliance

37.    Neither Plaintiff nor the Class need prove reliance – either individually or as a class –because under the circumstances of this case, which involves inaccurate financial statements described herein above, positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.  This complaint is based primarily on Defendants' material misrepresentations of the Company's financial statements described herein in violation of Generally Accepted Accounting Principles and federal securities regulations.

## Applicability of Presumption of Reliance:
## Fraud-on-the-Market Doctrine

38.     At all relevant times, the market for SandRidge's common stock was an efficient market for the following reasons, among others:

(a)     SandRidge's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     During the class period, on average, several hundreds of thousands of shares of SandRidge stock were traded on a weekly basis, demonstrating a very active and broad market for SandRidge stock and permitting a *strong* presumption of an efficient market;

(c)     As a regulated issuer, SandRidge filed with the SEC periodic public reports during the Class Period;

(d)     SandRidge regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)     SandRidge was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(f)     Numerous NASD member firms were active market-makers in SandRidge stock at all times during the Class Period; and

(g)     Unexpected material news about SandRidge was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

39.     As a result of the foregoing, the market for SandRidge's common stock promptly digested current information regarding SandRidge from all publicly available sources and reflected such information in SandRidge's stock price. Under these circumstances, all purchasers of SandRidge's common stock during the Class Period suffered similar injury through their purchase of SandRidge's common stock at artificially inflated prices, and a presumption of reliance applies.

## FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

40.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41.     This claim is asserted against all Defendants.

42.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase SandRidge's securities at artificially inflated and distorted prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, individually and as a group, took the actions set forth herein.

43. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of SandRidge as specified herein.

44. These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SandRidge's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about SandRidge and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers SandRidge's securities during the Class Period.

45. Each of the Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of the Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial

condition; (3) each of the Defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; (4) each of the Defendants was aware of the Company's dissemination of information to the investing public that they knew or recklessly disregarded was materially false and misleading; and (5) each of the Defendants culpably participated in the wrongful conduct alleged herein.

46.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing SandRidge's financial condition and future business prospects from the investing public and supporting the artificially inflated or distorted price of its securities.  As demonstrated by Defendants' misstatements of the Company's financial condition and business prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

47.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for

SandRidge's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of SandRidge's publicly-traded securities were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the Company's securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired SandRidge securities during the Class Period at artificially high prices and were damaged thereby.

48.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding SandRidge's financial results, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired SandRidge securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

49.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

50.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

51.    This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

52.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.    This Second Claim is asserted against each of the Individual Defendants.

54.    The Individual Defendants acted as controlling persons of SandRidge within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's revenues and earnings and dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contend are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

55.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

56.    As set forth above, SandRidge and the certain Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

57.    By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

58.    This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: November 10, 2014                    Respectfully submitted,

                                            **RUBENSTEIN & PITTS, PLLC**
                                            Michael A. Rubenstein, Esq.
                                            1503 E. 19th Street
                                            Edmond, OK  73013
                                            Phone:  (405) 340-1900
                                            Fax:      (405) 340-1001
                                            Email:  mrubenstein@oklawpartners.com

                                            **THE ROSEN LAW FIRM, P.A.**
                                            Phillip Kim, Esq.
                                            Laurence Rosen, Esq.
                                            275 Madison Avenue, 34th Floor
                                            New York, NY  10016
                                            Phone: (212) 686-1060
                                            Fax: (212) 202-3827
                                            Email: pkim@rosenlegal.com
                                            Email: lrosen@rosenlegal.com

                                            Counsel for Plaintiff