LEE, GOODWIN, LEE, LEWIS & DOBSON
Kyle Goodwin (OBA #17036)
William M. Lewis (OBA #19862)
1300 E. 9th, Suite 1
Edmond, OK 73034
Telephone: (405) 330-0118
Facsimile:  (405) 330-0767

*Counsel for Ralph Rindler and
Proposed Liaison Counsel for the Class*

BROWER PIVEN
  A Professional Corporation
Charles J. Piven (*pro hac vice* to be filed)
1925 Old Valley Road
Stevenson, MD 21153
Telephone: (410) 332-0030
Facsimile:  (410) 685-1300

*Counsel for Ralph Rindler and
Proposed Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| STEVE SURBAUGH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>SANDRIDGE ENERGY, INC., TOM L. WARD, JAMES D. BENNETT, EDDIE M. LEBLANC, AND RANDALL D. COOLEY,<br><br>Defendants. | **Civil Action No. 5:14-CV-01252-D** |

| | |
|---|---|
| STEVEN T. DAKIL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SANDRIDGE ENERGY, INC., TOM WARD, JAMES D. BENNETT, and EDDIE M. LEBLANC,<br><br>Defendants. | Civil Action No. 5:14-CV-01256-R |

**MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF RALPH RINDLER TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

Ralph Rindler ("Mr. Rindler") submits this memorandum in further support of his motion to: (1) consolidate the above-captioned related actions (the "Action(s)"); (2) appoint him as the Lead Plaintiff; (3) approve his selection of the law firm of Brower Piven, A Professional Corporation ("Brower Piven") as Lead Counsel for the Class and Lee, Goodwin, Lee, Lewis & Dobson ("LGL") as Liaison Counsel for the Class; and in opposition to the competing lead plaintiff motions.[1]

---

[1] On January 12, 2015, five movants each timely filed motions for consolidation and appointment as lead plaintiff and lead counsel, including: (1) Mr. Rindler; (2) Russell S. Peterman, Karen K. Potts, and Tom C. Dryden ("Peterman Investors"); (3) Michael M. Reddick, individually and on behalf of 4-Red Cattle Co. ("Mr. Reddick"); (4) Olen Wingard ("Mr. Wingard"); and (5) Anthony Giliberti, George Allen Maffett, III, Jack D. Stone, Justin Tuttleman, and Jose D. Rosario ("SandRidge Investors"). *See* Dkt. Nos. 15-16, 19, 21-26, 27 ("Rindler Memo"), 29-31. On January 30, 2015, Peterman Investors withdrew, acknowledging that they do not have the largest financial interest in the litigation. Dkt. No. 49. Thus, four competing motions remain.

Based on the submissions of the competing lead plaintiff movants, Mr. Rindler is "the most adequate plaintiff" within the meaning of that phrase under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb), because he has the largest financial interest in the relief that can be sought by the Class in these Actions among the lead plaintiff movants. The only appropriate methodology for determining the "financial interest in the relief sought," 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb), is to calculate the amount of potential *recoverable* losses a lead plaintiff movant could recover in the litigation. In that regard, the amount of recoverable losses is now limited by the United States Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), to the amount of the decline in the subject security in response to a curative revelation. *See id.* at 342-43. Accordingly, based on this Supreme Court mandate, courts now focus on the largest amount of *compensable* losses under *Dura* in determining which lead plaintiff movant has the largest financial interest in the relief sought by classes in PSLRA cases. *See, e.g., Espinoza v. Whiting*, No. 4:12-1711, 2013 U.S. Dist. LEXIS 6227, at *10 (E.D. Mo. Jan. 16, 2013) (the "Patriot Coal Investor Group's well-reasoned approach addresses the problems the *Dura* Court and others have cautioned against."); *see also Marjanian v. Allied Nevada Gold Corp.*, No. 3:14-cv-0175-LRH-WGC, Order, at 8-11 (D. Nev. Nov. 7, 2014), *aff'd*, No. 3:14-cv-0175, 2015 U.S. Dist. LEXIS 2782 (D. Nev. Jan. 8, 2015) ("This figure includes sales of the stock that occurred in May, June, and July, all before Allied Nevada revealed their misrepresentations on August 6, 2013. Including these sales in the calculation of total losses risks what *Dura* sought to prevent: loss figures that take into account not just

losses caused by the fraud, but also 'changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price.'"; "To calculate Heil/Boston's losses under *Dura*, the Court only considers (1) the depreciated value of the shares retained by Heil/Boston, and (2) losses realized on the sale of shares that occurred after Allied Nevada revealed its misrepresentations on August 6, 2013.") (citations omitted). Here, all of the lead plaintiff movants other than Mr. Rindler presented their entire trading losses in SandRidge Energy, Inc. ("SandRidge") securities resulting from intra-Class Period price fluctuations of those shares, which the Supreme Court rejected as a basis for recovery in a federal securities action in *Dura*, 544 U.S. at 342-43, rather than by calculating only their compensable losses as mandated by *Dura*. As a result, they have improperly artificially inflated their claimed alleged "financial interest in the relief sought" in the Actions, since they cannot recover their entire trading losses under *Dura*. As demonstrated below, re-calculating the other lead movants' losses under the *Dura* method results in Mr. Rindler possessing by far the largest financial interest in the relief sought by the Class among the competing lead plaintiff movants:

3

|  | *Dura* Loss | Claimed Loss In Motion Papers |
|---|---|---|
| **Mr. Rindler** | **$206,563.00** | $206,563.00[2] |
| **SandRidge Investors** | **$ 31,587.50** | $269,830 |
| **Mr. Reddick** | **$ 30,050.50** | $350,670 (LIFO) <br> $389,247 (FIFO)[3] |
| **Mr. Wingard** | **$ 19,943.75** | $327,941.48 |

Further, Mr. Rindler otherwise meets the "typicality" and "adequacy" requirements of Fed. R. Civ. P. 23, and no competing movant will be able to adduce the requisite "proof" necessary to rebut the presumption in favor of Mr. Rindler's appointment as lead plaintiff. Accordingly, Mr. Rindler should be appointed as the lead plaintiff, and the competing motions should be denied.

I. **Mr. Rindler Is The Presumptive Lead Plaintiff**

  A. **Mr. Rindler Has The Largest Financial Interest**

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), the presumptive lead plaintiff is the movant: (1) with the largest financial interest in the relief sought by the class; and (2) who otherwise satisfies the requirements of Rule 23. *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status…"). The presumptive lead plaintiff must be appointed unless it is proven that the movant will not satisfy the typicality and adequacy requirements of Rule 23. "That the district court believes

---

[2] For comparison purposes only, if Mr. Rindler calculated his claimed loss based on the improper methods used by the competing movants, his losses would be over two million dollars.

[3] LIFO is the last-in first-out analysis and FIFO is the first-in first-out analysis.

another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, that plaintiff is entitled to lead plaintiff status . . . ." *Cavanaugh*, 306 F.3d at 732. Here, as made clear in the chart above, Mr. Rindler possesses the "largest financial interest in the relief sought" in the Actions among the lead plaintiff movants and has demonstrated his adequacy by, among other things, affirmatively acknowledging his understanding of the role of a lead plaintiff and representative party and confirming that if appointed, he will diligently fulfill his obligations to act on behalf of and in the best interests of the members of the putative class in directing the litigation. *See* Declaration of William M. Lewis ("Lewis Decl"), Dkt. No. 27-2, Ex. A ("Rindler Certification").

In any action under the federal securities laws, the only relief that can be sought by a plaintiff or a class is the loss proximately caused by the defendant's fraud. *Dura*, 544 U.S. at 338. Under *Dura*, any recoverable losses must stem from a cognizable cause. *See id*. at 342. On its own, "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." *Id.* After all, there are many reasons, some innocent, for why a stock's price may drop. *Id.* at 343. In turn, to determine the amount of a proposed lead plaintiff's "financial interest in the relief sought" under the PSLRA, the proposed lead plaintiff must be at least theoretically able to recover the amount claimed through the litigation, because a plaintiff cannot have a "financial interest in the relief sought" that, as a matter of law, cannot be recovered in the litigation. As a result, a lead plaintiff movant cannot calculate his, her or its "financial interest in the relief sought" by simply pointing to the amount by which the stock was artificially

5

inflated when the shares were purchased. *Dura*, 544 U.S. at 340. Instead, a lead plaintiff movant's loss must be calculated based on the amount of the decline, if any, in the stock's price caused by the correction of prior misleading public information. *See id.* at 342, 347.

Here, the other movants' methodologies for calculating their respective financial interests impermissibly fail to connect the share price decline to corrective information and result in loss figures that include substantial amounts that are not recoverable under *Dura*. *See K-V Pharm. Co. Sec. Litig.*, No. 4:11-1816, 2012 U.S. Dist. LEXIS 62161, at *11 (E.D. Mo. May 3, 2012) ("[F]or purposes of evaluating financial interest, it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed.") (quoting *Schueneman v. Arena Pharms., Inc.*, No. 10-1959, 2011 U.S. Dist. LEXIS 87373, at *13 (S.D. Cal. Aug. 8, 2011)). "[A]ny losses that [a plaintiff] may have incurred before [the] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-01825, 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. March 2, 2007). Instead, courts must "look only at those recoverable losses caused by the alleged fraud-on-the-market when determining a lead plaintiff in a securities class action because the alleged misconduct could not cause losses suffered ***prior to that misconduct being revealed to the public***." *Id.* (emphasis added); *see also Perlmutter v. Intuitive Surgical, Inc.*, No. 10-03451, 2011 U.S. Dist. LEXIS 16813, at *15 (N.D. Cal. Feb. 15, 2011) (though finding that the distinction was not determinative of the outcome, acknowledging that: "In determining the financial interests

6

of potential lead plaintiffs some district courts decided, in light of *Dura*, not to consider losses resulting from stock trades that occurred prior to any disclosure of the defendant's fraud."). Thus, the other movants' attempts to increase their "financial interest in the relief sought" in the Actions for the purposes of their lead plaintiff motions should be rejected insofar as they are using their purchase prices as a measure of their "financial interest," rather than the declines in reaction to the truth being revealed, and they have included in their calculations of their "financial interest in the relief sought" declines in SandRidge's stock price during the Class Period that were not caused by any alleged curative information. These calculations must fail under *Dura*. Indeed, using purchase prices as a part of the loss calculation does precisely what the Supreme Court forbids:

> In our view, this statement of the law ["the price *on the date of purchase* was inflated because of the misrepresentation"] is wrong. . . . For one thing, as a matter of pure logic, at the moment the transaction takes place, the plaintiff has suffered no loss; the inflated purchase payment is offset by the ownership of a share that *at that instant* possesses equivalent value. . . . When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of the lower price. . . . Other things being equal, the longer the time between purchase and sale, the more likely that this is so, i.e., the more likely that other factors caused the loss.

*Dura*, 544 U.S. at 342-43 (italics in original). Thus, the Supreme Court made clear neither the purchase price of a security nor declines in a security's price unrelated to a curative disclosure are relevant to the amount of a plaintiff's recoverable loss in a federal securities action. Nevertheless, those two irrelevant metrics are precisely what the other movants have tried to use in presenting their alleged "financial interest in the relief

7

sought" in these Actions. They seek to credit their purchase prices – which would reflect the inflation at the time of purchase. They also seek to credit the amount of the decline in the price of the shares between the time of their purchases, but before any curative disclosure occurred that would link those declines to the alleged misrepresentations and omissions. Accordingly, they have improperly inflated their claimed losses by using calculations that the Supreme Court has dispositively held cannot be used to support a claimed loss under the federal securities laws.

In contrast, Mr. Rindler calculated his financial interest by looking directly to *Dura* and the PSLRA. *See* Lewis Decl., Ex. B (explaining in detail how the analysis was done). None of his losses were calculated by impermissibly assuming that all of his losses were attributable to SandRidge's alleged misrepresentations and omissions. Instead, consistent with *Dura*, Mr. Rindler calculated his losses based strictly on the amount that SandRidge stock declined following publication of information correcting alleged prior misleading statements made during the Class Period. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2185 (2011); *Dura*, 544 U.S. at 342; *see also Marjanian*, No. 3:14-cv-0175-LRH-WGC, Order, at 8-11; *Espinoza*, 2013 U.S. Dist. LEXIS 6227, at *11 (appointing a lead plaintiff whose losses were calculated using the *Dura* method); *Prefontaine v. Research In Motion Ltd.*, No. 11-4068, 2012 U.S. Dist. LEXIS 4238, at *9-*10 (S.D.N.Y. Jan. 5, 2012); *Shah v. GenVec, Inc.*, No. 8:12-00341, Order (D. Md. Apr. 26, 2012).

While the other movants may argue that courts have not yet uniformly applied the Supreme Court's mandates from *Dura*, that is because the competing movants in those

cases all used the outmoded and incorrect trading loss methodology and, thus, the issue was not raised by the parties, or the courts relied on methodologies based on precedents decided before *Dura* dramatically changed the rules for calculating recoverable losses in federal securities law actions. Based on a proper application of the law, Mr. Rindler is clearly the movant with the largest financial interest in the relief that can be sought in these Actions and, thus, he is the presumptive lead plaintiff. Furthermore, even under the methods applied before *Dura*, Mr. Rindler still has the largest financial interest in these Actions, as his losses are millions of dollars.

> **B.** **Mr. Rindler Meets The Requirements Of Rule 23(a)**

In addition to having the "largest financial interest," Mr. Rindler "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(cc). At this stage, the lead plaintiff movant must make only a *prima facie* showing that the adequacy and typicality requirements under Rule 23 have been met, *see Prissert v. Emcore Corp.*, No. 08-1190, 2010 U.S. Dist. LEXIS 86598, at *10-*11 (D.N.M. July 14, 2010), which Mr. Rindler has done. *See* Rindler Memo at 9-11. Mr. Rindler's claims are "typical" of the claims of the proposed Class within the meaning of Rule 23(a)(3) because his claims arise from the same facts and course of conduct by defendants that gives rise to the other Class members' claims and are based on identical legal theories. *Cooke v. Equal Energy Ltd.*, No. 14-0087, 2014 U.S. Dist. LEXIS 63452, at *7-*8 (W.D. Okla. May 8, 2014). Like other Class members, Mr. Rindler purchased SandRidge shares when the prices were alleged to be artificially inflated due to defendants' false and misleading statements and suffered damages therefrom.

The adequacy requirement is satisfied when the lead plaintiff movant's interests are not antagonistic to those of the class, the movant has a sufficient interest in the outcome of the case to ensure that the movant will vigorously prosecute the action, and the movant selects competent counsel with experience prosecuting securities class action litigation. *See id.*, at *8  As demonstrated by Mr. Rindler's sworn PSLRA-mandated certification, he is familiar with the duties of a lead plaintiff and class representative under the PSLRA and Rule 23, respectively, and is prepared to diligently discharge those duties. *See generally* Rindler Certification.  Mr. Rindler has no interests antagonistic to the other class members and has a significant stake in the outcome of these Actions to ensure vigorous prosecution of the claims.  Finally, Mr. Rindler has retained qualified counsel. *See* Lewis Decl., Exs. D & E.  Therefore, Mr. Rindler's adequacy is established to the extent necessary to support his appointment as Lead Plaintiff.

## II.     SandRidge Investors Are Not A Proper PSLRA Group

Even if SandRidge Investors had the largest financial interest in the relief sought in this litigation, which they do not, their motion would still need to be denied because they are not a proper "group" within the meaning of that term under the PSLRA.  As one court so aptly stated, "a Court should not blindly aggregate the losses of unrelated plaintiffs to confer lead plaintiff status on a group ***without considering whether the grouping is sufficiently coherent to control the litigation***." *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 44 (D. Mass. 2001) (emphasis added).

Indeed, as Third Circuit explained in its oft-cited decision in *In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001), regarding considering the selection of a lead plaintiff

10

"group":

> The second additional factor that the court should consider in making the threshold adequacy determination will arise only when the movant with the largest interest in the relief sought by the class is a group rather than an individual person or entity. . . . But the goal of the Reform Act's lead plaintiff provision is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class, and a group is not entitled to presumptive lead plaintiff status unless it "otherwise satisfies" Rule 23, which in turn requires that it be able to "fairly and adequately protect the interests of the class." ***If the court determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class. . . If, for example, a court were to determine that the movant "group" with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that "group" could not be counted on to monitor counsel in a sufficient manner.***

*Id.* at 266-67 (internal citations omitted)(emphasis added).

Indeed, one of the main "'purposes of the PSLRA was to prevent lawyer-driven litigation,'" which "is undermined by allowing 'lawyers to designate unrelated plaintiffs as a "group" and aggregate their financial stakes' because such a practice 'would allow and encourage lawyers to direct the litigation.'" *In re Level 3 Commc'ns, Inc. Sec. Litig.*, No. 09-00200, 2009 U.S. Dist. LEXIS 44706, at *12 (D. Colo. May 4, 2009); *In re Gemstar-Tv Guide Int'l Secs. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002) (same); *Ruland v. InfoSonics Corp.*, No. 06-1231, 2006 U.S. Dist. LEXIS 79144, at *9 (S.D. Cal. Oct. 23, 2006) ("If courts permit lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes, the purpose of the PSLRA would be undermined.").

Therefore, "[a]lthough the PSLRA does not explicitly prohibit a group of

11

unrelated individuals from acting as lead plaintiff, courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff." *Gemstar,* 209 F.R.D. at 451 (internal citations omitted); *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-06140, 2008 U.S. Dist. LEXIS 64633, at *22 (N.D. Cal. Aug. 22, 2008) ("'courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, ***brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff****.*'  Courts have held either that this construction fails to meet the adequacy prong of Rule 23 or that it makes the group unfit to be appointed lead plaintiff because it is contrary to legislative intent."); *In re Netflix, Inc., Sec. Litig.*, No. 12-0225, 2012 U.S. Dist. LEXIS 59465, at *14-*15 (N.D. Cal. Apr. 26, 2012) (". . . the courts of this circuit uniformly refuse to aggregate the losses of individual investors with no apparent connection to each other aside from their counsel.") (citing cases); *Apple v. LJ Int'l, Inc.*, No. 07-6076, 2008 U.S. Dist. LEXIS 12618, at *10-*11 (C.D. Cal. Feb. 8, 2008) ("To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation. Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff.").

Although there are no set criteria to assess groups, courts typically require "specific information from proposed lead plaintiffs, including 'descriptions of [the group's] members . . . an explanation of how its members would function collectively, and a description of the mechanism that its members and the proposed lead counsel have

established to communicate with one another about the litigation.'" *In re Versata, Inc. Sec. Litig.*, No. 01-1439, 2001 U.S. Dist. LEXIS 24270, at *19 (N.D. Cal. Aug. 20, 2001) (quoting *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999)). It is firmly established that "[t]he burden is on those seeking to aggregate to demonstrate the cohesiveness of their purported 'group' and that *failure to provide significant information about the identity of the members other than a conclusory statement of names, transactions for purchase of securities, and largest financial interest should result in denial of their application for appointment as Lead Plaintiff.*" *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000) (emphasis added; citation omitted); *Schriver v. Impac Mortg. Holdings, Inc.*, No. 06-31, 2006 U.S. Dist. LEXIS 40607, at *25 (C.D. Cal. May 2, 2006) (groups "are not adequate class representatives absent a showing that they are able to coordinate their efforts in the litigation").

Here, SandRidge Investors is comprised of five unrelated investors, who had no prior connection to one another prior to the filing of the lead plaintiff motion, and who were clearly cobbled together by their lawyers. Moreover, SandRidge Investors have not *submitted any information* at all, except the required PSLRA certifications that every movant submitted, about any of its members or even attempted to explain the manner in which this "group" can operate as a cohesive "group" or monitor its counsel. Indeed, there is not even an indication where the members of SandRidge Investors reside. Additionally, there is no evidence that the members of SandRidge Investors have ever communicated or even know that a lead plaintiff motion has been filed on their behalf as

13

part of a group. *See In re Tarragon Corp. Sec. Litig.*, No. 07-07972, 2007 U.S. Dist. LEXIS 91418, at *3, *5-*6 (S.D.N.Y. Dec. 6, 2007); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000) (group "failed to present evidence" that "members of the group had ever communicated with one another"); *see also Tsirekidze v. Syntax-Brillian Corp.*, No. 07-2204, 2008 U.S. Dist. LEXIS 118562, at *18 (D. Ariz. Apr. 4, 2008) (refusing to appoint the group because "[t]here is simply no evidence that this 'group' has a meaningful connection"); *In re Jones Soda Co. Secs. Litig.*, No. 07-1366, 2008 U.S. Dist. LEXIS 14884, at *7 (W.D. Wash. Feb. 12, 2008) ("A loose group of investors whose relationship was forged only in an effort to win appointment as lead plaintiff has no real cohesiveness, is less likely to be in control of the litigation, and is subject to all of the obstacles that normally make group action difficult."). Clearly, this "group" was improperly cobbled together by its counsel to maximize financial interest to gain control of the litigation, and even if it did have the largest financial interest, which it does not, it cannot be appointed as lead plaintiff here.

## III. Only Mr. Rindler is the "Most Adequate Plaintiff"

Not only do movants Mr. Reddick, Mr. Wingard, and SandRidge Investors have claimed losses that are far less than those suffered by Mr. Rindler by any measure, but they provide insufficient evidence allowing the Court to adopt any presumption that they meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. Thus, the motions of Mr. Reddick, Mr. Wingard, and SandRidge Investors should be denied.

## **CONCLUSION**

For all of the foregoing reasons, Mr. Rindler respectfully requests that the Court:

14

(a) consolidate the related Actions; (b) appoint Mr. Rindler to serve as Lead Plaintiff in these Actions; (c) approve Mr. Rindler's selection of Lead Counsel and Liaison Counsel; and (d) grant such other and further relief as the Court may deem just and proper.

Dated: February 2, 2015  Respectfully submitted,

LEE, GOODWIN, LEE, LEWIS & DOBSON

  */s/ William M. Lewis*
Kyle Goodwin, OBA #17036
William M. Lewis, OBA #19862
*Attorneys-in-charge*
1300 E. 9th, Suite 1
Edmond, OK 73034
Telephone: (405) 330-0118
Facsimile:   (405) 330-0767
blewis@edmondlawoffice.com

*Counsel for Ralph Rindler and*
*Proposed Liaison Counsel for the Class*

BROWER PIVEN
   A Professional Corporation
Charles J. Piven (*pro hac vice* to be filed)
1925 Old Valley Road
Stevenson, MD 21153
Telephone: (410) 332-0030
Facsimile:  (410) 685-1300
piven@browerpiven.com

*Counsel for Ralph Rindler and*
*Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that this Memorandum In Further Support Of The Motion Of Ralph Rindler To Consolidate Related Actions; To Be Appointed Lead Plaintiff; and To Approve Proposed Lead Plaintiff's Choice Of Counsel was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on February 2, 2015.

                                                       _/s/ William M. Lewis_
                                                      William M. Lewis